IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

------------------------------------------------------- :
UNITED STATES OF AMERICA,           : CASE NO.  1:10 CR 00046
                                    :           1:10 CR 00331
                        Plaintiff,  :
                                    :
            -vs-                    : <u>MEMORANDUM OF OPINION AND</u>
                                    : <u>ORDER DENYING DEFENDANTS'</u>
                                    : <u>SUPPRESSION MOTIONS</u>
ELISE MILLER, et al.,               :
                                    :
                        Defendants. :
------------------------------------------------------- :

UNITED STATES DISTRICT JUDGE LESLEY WELLS

      Before the Court are two suppression motions filed by Defendant Elise Miller and joined into by her co-Defendant and husband, Dana Campbell (parties hereinafter referred to as "Defendants").  Defendants seek to suppress evidence obtained in the 26 August 2008 warrant search of her pharmacies – Three Rivers Infusion and Pharmacy Specialists, and Miller's Pharmacy (hereinafter "Three Rivers") – located in adjoining space in a run of buildings in Coshocton, Ohio.  (Doc. 70).  Defendants also seek to suppress evidence obtained from a warrant search of her residence (hereinafter

"Miller Residence") on 11 December 2009. (Doc. 69) The government opposes the motions (Docs. 69. 70), and Defendants have replied to that opposition. (Docs. 73, 74).

**I.**

Ms. Miller was a registered pharmacist and, between 1987 and 2008, owned and operated Three Rivers, a medical infusion supply company providing home health services and pharmaceutical supplies. Mr. Campbell worked at Three Rivers. Three Rivers billed health insurance providers including Medicare, Medicaid, and other private insurance companies for drugs and services provided to patients. The government charges the Defendants with carrying out an extended pattern and practice of intentionally over-billing for pharmaceutical services provided by Three Rivers during a four year period, for which agents had reviewed Medicaid billing records and audits conducted of Three Rivers billing by private insurance carriers. The government also charges the Defendants with witness tampering, obstructing official proceedings, and concealment of records.

Of the investigation, the government notes that, beginning in approximately May 2008,

> agents with the Federal Bureau of Investigation and the United States Department of Health and Human Services Office of the Inspector General, joined an ongoing investigation initiated by the Ohio Department of Insurance and the Ohio Attorney General's Office (Medicaid Fraud Control Unit), involving allegations that Three Rivers was over-billing various medical insurance programs for medical services and drugs, including a drug known as "Synagis" dispensed by Three Rivers to infants.

(Doc. 1, Indictment Case 10 CR 46, ¶4). Pursuant to the investigation, Special Agent Benjamin R. Unkerfer ("Agent Unkerfer"), with the Office of the Inspector General,

United States Department of Health and Human Services, authored an affidavit in support of the warrant for the search of the Three Rivers business premises, signed by Magistrate Judge Mark Abel, and carried out on 26 August 2008. (Doc. 70, Attachment A, Three Rivers Affidavit). Following the search of Three Rivers the government served an administrative subpoena upon the Defendants on 3 December 2008, seeking 118 specific Synagis patient files. Three Rivers provided the government with 21 of the files requested.

Further investigation led the government to seek a separate warrant for the search of the Defendants' residence. Special Agent Quentin Holmes, Federal Bureau of Investigation, authored the affidavit in support of the search warrant for the Miller Residence. Mr. Holmes represented that agents from the Ohio Department of Insurance and the Ohio Attorney General's Office, Medicaid Fraud Control Unit, had cause to believe that unidentified Synagis patient files were being stored at the Miller residence. The 11 December 2009 search of the Miller Residence, pursuant to the warrant, yielded among other items, approximately 64 patient files, most of which had been previously requested by the administrative subpoena from 3 December 2008.

The Defendants' challenge to the viability of the search warrants, predicated on the allegation that the underlying affidavits did not provide sufficient basis for a finding of probable cause by the magistrate judges, resulted in a suppression hearing held on 29 November 2012. Present at the hearing were Ms. Miller and her attorney Timothy Ivey, Dana Campbell and his attorney Jaime Serrat. AUSA Rebecca Lutzko and counsel Constance Nearhood, from the Ohio Attorney General's Office represented the government. The Court heard testimony from the affiants, Agent Quintin Holmes (via

videotaped deposition) and Agent Benjamin Unkerfer, testifying to their preparation for and carrying out the searches, respectively, of the Miller Residence and Three Rivers Pharmacy.  Further testimony was heard from Special Agent Thomas Fluhart, of the Ohio Attorney General's Office, Health Care Fraud Unit, and from Special Agent Eric Howe from the U.S. Department of Health & Human Services, Office of Inspector General, Office of Investigations.  (Hearing Transcript (hereinafter "Tr."). 164-183; Tr. 183-202)  Both Agents Fluhart and Howe testified as to their conversations with several lay witnesses and with regard to the analysis carried out in building the affidavits for the magistrates' signatures.  The Court also heard testimony from lay witnesses Doris Granger, a former employee of Three Rivers represented in the residential search affidavit (Miller Residence Affidavit ¶ 25; Tr. 10-30), from Kay Wisenberg, a former employee of Three Rivers represented in the residential search affidavit (Miller Residence Affidavit ¶ 26; Tr. 30-48), and from Mary Richards, the Miller's housekeeper represented in the residential search affidavit (Miller Residence Affidavit ¶¶ 26, 28; Tr. 48-78).

For the reasons discussed below, predicated on the record evidence and the testimony and credibility assessments of the witnesses by this Court, the Defendants' motions for suppression will be denied.

**II.**

The Fourth Amendment provides, "[n]o warrant shall issue but upon probable cause, supported by oath or affirmation...." U.S. Const. amend. IV. Probable cause is a fluid concept that is defined as being "reasonable grounds for belief, supported by less

than *prima facie* proof, but more than mere suspicion" and exists "when there is a 'fair probability' given the totality of the circumstances, that contraband or evidence of a crime will be found in a particular place."  United States v. Lattner, 385 F.3d 947, 951 (6th Cir. 2004), cert, denied, 543 U.S. 1095, 125 S.Ct. 979, 160 L.Ed.2d 908 (2005).

In Illinois v. Gates, the Supreme Court set forth the basic standard for assessing whether an affidavit establishes probable cause to issue a search warrant:

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him [or her] ... there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of the reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed.

462 U.S. 213, 238–39, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) (internal quotations and citations omitted); see also United States v. Helton, 314 F.3d 812, 819 (6th Cir. 2003). The issuing magistrate need only have had a substantial basis for concluding that probable cause existed.  Gates, 275 F.3d at 238–39.  Moreover, a finding of "probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." Id. at 243–44 n. 13.

A magistrate judge's probable cause determination "should be paid great deference by reviewing courts."  Gates, 462 U.S. at 236.  However, that deference is not absolute, and reviewing courts must ensure that the issuing magistrate did "not serve merely as a rubber stamp for the police."  United States v. Leon, 468 U.S. 897, 914, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984).  Further, reviewing courts "will not defer to a warrant based on an affidavit that does not 'provide the magistrate with a substantial

5

basis for determining the existence of probable cause.' " Leon, 468 U.S. at 915 (quoting Gates, 462 U.S. at 239).

In assessing the issuing magistrate judge's probable cause determination, the reviewing court is concerned only with those facts which appear within the four corners of the affidavit. United States v. Weaver, 99 F.3d 1372 (6th Cir. 1998) (citing Whitely v. Warden, 401 U.S. 560, 564–65, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971)). However, if the affidavit contains false statements that are shown to have been made knowingly and intentionally, or with reckless disregard for the truth, and if those false statements were necessary to the finding of probable cause, the evidence seized pursuant to the warrant will be suppressed. Franks v. Delaware, 438 U.S. 154, 155–56, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978).

A Franks claim entails a two-part analysis: (1) whether the defendant has shown by a preponderance of the evidence that false statements were deliberately or recklessly made; and (2) "whether the affidavit, without the false statements, provides the requisite probable cause to sustain the warrant." United States v. Charles, 138 F.3d 257, 263 (6th Cir. 1998). A defendant is entitled to an evidentiary hearing on the veracity of the statements in the affidavit if both parts of the analysis are established.

The first element of the Franks inquiry asks the Court to consider whether the affidavit contains false information that was intentionally or recklessly made. Inaccurate statements that are the result of mere negligence or mistake do not fall within the framework of Franks. Id. 438 U.S. at 171.

While "false information" can include material omissions, the Sixth Circuit has "repeatedly held that there is a higher bar for obtaining a Franks hearing on the basis of

6

an allegedly material omission as opposed to an allegedly false affirmative statement." United States v. Fowler, 535 F.3d 408, 415 (6th Cir. 2008) ("Allegations of material omission are held to a higher standard because of the 'potential for endless rounds of Franks hearings' due to potentially 'endless conjecture about investigative leads, fragments of information, or other matter[s] that might, if included, have rebounded to defendant's benefit.' " (quoting United States v. Martin, 920 F.2d 393, 398 (6th Cir. 1990)).  The Sixth Circuit has reiterated that "except in the very rare case where the defendant makes a strong preliminary showing that the affiant with an intention to mislead excluded critical information from the affidavit, and that omission is critical to the finding of probable cause, Franks is inapplicable to the omission of disputed facts." Mays v. City of Dayton, 134 F.3d 809, 816 (6th Cir. 1998) (emphasis in original). Thus, "an affidavit which omits potentially exculpatory information is less likely to present a question of impermissible official conduct than one which affirmatively includes false information."  United States v. Atkin, 107 F.3d 1213, 1217 (6th Cir. 1997).

If a defendant succeeds in making a preliminary showing that the affidavit contained false information that was intentionally or recklessly made, the second element of the Franks inquiry requires the Court to consider whether the affidavit, without the false statements, provides the requisite probable cause to sustain the warrant. The Court must "determine whether, in light of the totality of the circumstances, the judge issuing the warrant had a substantial basis for concluding that a search of the specified premises would uncover evidence of wrongdoing."  United States v. Logan, 250 F.3d 350, 364 (6th Cir. 2001).

**III.**

The Court has examined the Defendants' submitted contentions regarding false statements in the affidavit for the residential search (affiant Special Agent Quintin Holmes) and finds that the issues raised are immaterial to the probable cause determination. Moreover, the Defendants have failed to make a substantial preliminary showing that Agent Holmes submitted the information in the affidavit with reckless disregard for the truth. A reckless disregard for the truth means that the affiant "entertained serious doubts about the truth of his allegations." United States v. Bonds, 12 F.3d 540, 569 (6th Cir. 1993). Such reckless disregard cannot be shown by pointing to instances of "negligence or innocent mistake[.]" Franks, 348 U.S. at 171. None of the evidence presented to the Court, prior to or during the hearing, raised even a reasonable suspicion that Agent Holmes held "serious doubts" about the truth of the allegations made in the affidavit for the search of the Miller Residence. During his testimony, Agent Holmes evinced no doubt as to the allegations he presented. None of the testimony by Ms. Granger, Ms. Wisenberg, or Ms. Richards undermined the sufficiency of the affidavit.

Equivalently, the Three Rivers affidavit, laid the foundation for a finding of probable cause, specifically a probability of substantial chance of criminal activity. Gates, 462, U.S. at 243-44, n. 13; United States v. Graham, 275 F.3d 490, 502 (6th Cir. 2001). The affidavit specifically identified records or categories of records providing the

necessary probable cause similar to that provided and approved in other complex fraud cases.  Andresen v. Maryland, 427 U.S. 463, 481, n. 10 (1976);  United States v. Savoca, 761 F.2d 292, 299 (6th Cir. 1985).  In so doing, the warrant did not exhibit a sweep beyond its means in this complex fraud case.  United States v. Abboud, 438 F.3d 554, 576 (6th Cir. 2006);  United States v. Blair, 214 F.3d 690, 697 (6th Cir. 2000).

In support of the sufficiency of the affidavits, the investigative process, the analysis, and review that went into the warrant application, the Court heard credible testimony from Special Agents Holmes, Unkerfer, Fluhart, and Howe.  The Court affords considerable gravitas to the reasoned conclusions of these experienced medical fraud agents.  See United States v. Lawson, 999 F.2d 985, 987 (6th Cir. 1993).  The affidavits they submitted to the magistrate judges provided the facts and circumstances – the billing audits and noted discrepancies between billing and nursing agency records – indicating a "fair probability" of fraudulent billing.  Abboud, 438 F.3d at 572.   The sampling provided in the affidavit was sufficient, United States v. Graham, 275 F.3d 490, 502 (6th Cir. 2001), where the agents found a pattern of fraudulent billings and the magistrate judges were advised of the millions of dollars of claims made over the period as compared to the comparatively small number of billings reviewed by the agents.

The taped deposition testimony of affiant Agent Holmes, responsible for the Miller Residence affidavit, indicates that, aside from an immaterial poor phrasing in paragraph 22, the affidavit provided the necessary substantial basis for the magistrate to determine that probable cause that evidence of a violation of 18 U.S.C. § 1347, Health Care Fraud, would be found at the Miller Residence.  The Court heard highly credible testimony from affiant Agent Unkerfer, an experienced health care fraud

investigator, discussing the means by which a pattern of improper billing established the terms of the affidavit and, thereby, the basis for probable cause to search Three Rivers.

The considered testimonies of lay witnesses Ms. Granger, Ms. Wisenberg, and Ms. Richards did not meaningfully challenge the sufficiency of the Miller Residence affidavit. Starting off the hearing, Ms. Granger testified that she did not make the statement attributed to her in the Miller Residence affidavit, namely that the box of Synagis files left in the conference room at Three Rivers after the search of the pharmacy "represented false billings." (Def. Exh. A. Miller Residence Affidavit, ¶ 25). Yet, the strength of Ms. Granger's recall was minimal at best, and she exhibited a fair amount of confusion during her testimony. Moreover, she did indicate during cross-examination that she had heard from Patti Groff (another former employee cited in the affidavit at ¶ 27) about "false billing" and that she may have relayed that information to Beth McCloskey, the investigator with the Ohio Department of Insurance responsible for this case.

The next lay witness, Ms. Wisenberg, testified that she did not relay to the investigator that Mary Richards, the Millers' housekeeper, had told her that "Three Rivers Synagis files were moved" to the Miller Residence. Yet, Ms. Wisenberg's credibility was severely stretched by her admitted difficulty in recalling the prior events under question. Further, and more importantly, on cross-examination Ms. Wisenberg did recall that Ms. Richards, a personal friend, had told her that she had found files at the Miller Residence. (Tr. 45-46). Credible testimony from Agent Fluhart, drawn from his contemporaneous report, corroborated that Ms. Wisenberg had informed him of Synagis billing anomalies and that Synagis files were at the Miller residence. (Tr. 182).

10

The final lay witness, Mary Richards, who continues in the Millers' employ as their housekeeper, testified as to her role in finding patient files in a box in the attic of the Miller Residence, patient files in the garage of the Miller Residence, and her conversations with Ms. Wisenberg.  Ms. Richards' testimony fully corroborated the representations made by Agents Holmes and Howe and made in the affidavit regarding finding patient files in the Miller Residence.  (Miller Residence Affidavit, ¶ 28).  While she testified that she did not tell her friend, Ms. Wisenberg, about the patient files stored at the Miller Residence until *after* the December 2009 search she, nevertheless, equivocated over the timing and possibility of this conversation during her testimony.  (Tr. 71-72).

The Court heard further testimony regarding the search of Three Rivers pharmacy as it related to a seven-page sketch (Defendants' Exh. J) of the rooms searched on 26 August 2008.  The warrant called for a search of the addresses 234 and 238 Main Street, Coshocton, Ohio.  Both of these buildings appeared, from images provided, as two story buildings running contiguously, while a third building, 240 & 240½ Main Street, abutted the right wall of 238 Main Street and rose to three stories.  (Defendants' Exh. H).  Prompted by the sketch on page six, which indicated a set of stairs moving from the second floor of 238 Main Street to a "3rd Floor", the Defendants question whether those stairs led to the third building, an address not authorized by the warrant for a search.  This matter was discussed thoroughly by several Agents and laid to rest with the testimony of Agent Unkerfer.  (Tr. 130-155).

Having heard the testimony and reviewed the sketches of the floor plans made at the time of the search of Three Rivers, the Court is satisfied that the search was

11

Constitutionally proper.  First, it is far from certain from the testimony and evidence that a third building was searched.  Second, the description of the property to be searched was Constitutionally valid.  See United States v. Durk, 149 F.3d 464, 465 (6th Cir. 1998); United States v. Prout, 526 F.2d 380, 387 (5th Cir. 1976); see also United States v. Bedford, 519 F.2d 650, 655 (3d Cir. 1975).  Third, even if the government did perform a search of a location other than the one intended by the magistrate judge, the Court finds the government demonstrated the objective reasonableness of the Agents' good-faith reliance on the propriety of their location.  All evidence indicates that Agents at the time of the search believed they remained in Three Rivers at 238 Main Street during their search.  United States v. Leon, 468 U.S. at 916, 922.

**IV.**

The Defendants' arguments and testimonial evidence have failed to demonstrate that the search warrants authorizing the seizure were insufficient to support probable cause to conduct a search for evidence under the Fourth Amendment.  Consequently, the Defendants' motions to suppress evidence obtained at Three Rivers and the Miller Residence are denied.

IT IS SO ORDERED.

    /s/Lesley Wells
UNITED STATES DISTRICT JUDGE

Date: 7 December 2012